## Case No. 11,550.
### Ex parte RANDALL et al.

[5 Law Rep. 115; 1 Pa. Law J. 133; 1 N. Y. Leg. Obs. 199.]

Circuit Court, E. D. Massachusetts. June, 1842.

BANKRUPTCY — VOLUNTARY PETITION — APPLICATION TO WITHDRAW.

1. A voluntary petition for a decree of bankruptcy may be withdrawn, and all further proceedings stayed, on the application of the petitioner, before the decree has been made, upon proper cause shown, and the payment of costs.

[Cited in brief in Dudley's Case, Case No. 4,114. Cited in Ex parte Harris, Id. 6,-110.]

2. Whether a petition can be dismissed and further proceedings stayed, after a decree of bankruptcy, quære.

This was a petition in bankruptcy, by Benjamin Randall and Timothy Reed, of Boston, traders and copartners. The petition stated in substance, that on the second day of March, 1842, one of the petitioners, Randall, presented to the judge of the district court, a petition that the said Randall, and the aforesaid copartnership, might be declared bankrupt, and be entitled to the benefit of the bankrupt act; that Timothy Reed, the other petitioner, then being dangerously sick, was entirely ignorant of said proceedings, and did not join; that since the filing of the said petition, the petitioners had entered into a composition, compromise and settlement with all their joint and separate creditors, and were desirous of proceeding no farther under their aforesaid petition; to which course the creditors consented. Wherefore the petitioners prayed, that all proceedings under their aforesaid petition might be stayed, and that the same might be dismissed. Upon the hearing and proofs offered in the district court, it was ordered, "that the question whether upon the facts set forth in the said petition, the petitioners can and ought to be permitted to discontinue proceedings under their original petition and to withdraw the same, or what relief shall be granted, be adjourned into the circuit court of the United States for this district, to be heard and determined by the court."

The cause now came on for argument in the circuit court, and was submitted to the court by Rand & Fiske for petitioners; there being no opposition on the part of the creditors.

STORY, Circuit Justice. I have no doubt whatsoever in this case, that the prayer of the petitioners may and ought to be granted; and that all further proceedings should be stayed, and the petition dismissed, upon the payment of all the costs, hitherto incurred touching the same, and now remaining unpaid. The application is made before any decree has been passed in bankruptcy, declaring the petitioners, or either of them, to be bankrupts, and giving them the benefit of the act of congress. If the application had been made after such a decree, it might have involved other considerations; for the effect of such a decree would be to devest out of the bankrupt all his property and rights of property from that time, and to vest the same in the assignee in bankruptcy, immediately upon his appointment. I do not mean to say, that it might not even then be competent for the court, upon proper proceedings, upon application of all parties—the bankrupt, the assignee, and all the creditors—to direct a stay of all further proceedings. That is a point, which need not be considered upon the present occasion; for here the petition has been filed by the voluntary act of the petitioner, (Randall), and there has been no proceeding in invitum by any of the creditors; and no rights have as yet positively attached in their favor, which the court is bound to enforce in bankruptcy. It does not occur to my mind, therefore, that there is any sound

legal objection to stay all further proceedings upon this petition, and to dismiss the same. It is in the nature of a supersedeas; and the grant of that is ordinarily a matter of sound discretion in the court sitting in bankruptcy. It is by no means an uncommon function for the lord chancellor, sitting in bankruptcy, to award a writ of supersedeas to supersede the proceedings on the commission, however rightfully it may have been issued, upon the application of the bankrupt, after he has been decreed a bankrupt, with the consent, not of all his creditors, but merely of all his creditors who have proved their debts. It is not, indeed, a matter of strict right; and the lord chancellor may, and often does, refuse to supersede it in such a case, where opposition is made thereto by other creditors, or it might produce injustice. Ex parte King, 2 Ves. Jr. 40; Ex parte Stokes, 7 Ves. 408; Ex parte Duckworth, 16 Ves. 416; Ex parte Jackson, 8 Ves. 533; Ex parte Milner, 19 Ves. 204; Ex parte Law, 4 Madd. 273,—sufficiently show the general practice and the limitations and qualifications thereof. See, also, 1 Deac. Bankr. Prac. pp. 808–833, c. 20, §§ 1–4; Archb. Bankr. (by Flather, Ed. 1842) p. 336. A decree in bankruptcy being in legal contemplation an execution for the benefit of all the creditors, the court will take care, that it shall not be superseded without good cause, and, where it is valid, not generally without the consent of all the creditors. Ex parte Stokes, 7 Ves. 408.

In the present case, I understand, that all the creditors, who are known to be such, concur in this application. They have made a compromise and composition of their debts; and there is, therefore, no longer any ground to retain the petition; for the court cannot presume, that any other creditors exist, or that any possible injury can occur from a dismissal of the petition. The proper course is to stay all further proceedings, and to dismiss the petition, as I have already intimated, upon the payment of costs. I shall direct a certificate to be sent to the district court accordingly.

## Case No. 11,551.

### In re RANDALL et al.

[1 Deady, 557;[1] 2 Am. Law T. Rep. Bankr. 69; 3 N. B. R. 18 (Quarto, 4); 1 Chi. Leg. News, 209.]

District Court, D. Oregon. Feb. 28, 1869.

BANKRUPTCY—PETITION—DETAILS—ALLEGATIONS—INSOLVENCY—ACTS OF BANKRUPTCY—ASSIGNMENT.

1. The facts concerning an alleged act of bankruptcy should be stated in the petition with such certainty and detail, as to inform the debtor of what he is required to make proof or explanation, as provided in section 41 of the act [of 1867 (14 Stat. 537)].
[Cited in Re Price, Case No. 11,411; Re Hadley, Id. 5,894.]

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

2. An allegation in a petition that the debtor being a trader, stopped payment of his commercial paper within a period of fourteen days, is too indefinite to put the burden of proof upon the debtor concerning such alleged stoppage, and may be disregarded as immaterial.
[Cited in Re Ryan, Case No. 12,183.]

3. An insolvent is one who is unable to pay his debts in full at once, or as they become due.
[Cited in Re Walton, Case No. 17,130; Re Oregon Bulletin Printing & Publishing Co., Id. 10,559.]

4. An assignment of his property by an insolvent person for the purpose of having the same distributed among his creditors, is presumed to have been done with intent to defraud the operation of the bankrupt act, by preventing such property from coming to the assignee in bankruptcy, and being distributed under the act, and is therefore an act of bankruptcy.
[Cited in Re Ryan, Case No. 12,183; Catlin v. Hoffman, Id. 2,521; Martin v. Toof, Id. 9,167; Re Marter, Id. 9,143; Re Seeley, Id. 12,628.]

5. An assignment by a solvent person of all his property to a trustee for the equal benefit of the creditors, is an act of bankruptcy, because it hinders and delays creditors in the collection of their debts, and for the same reason it is void under the statute of frauds.
[Cited in Globe Ins. Co. v. Cleveland Ins. Co., Case No. 5,486.]

In bankruptcy.

Mr. Friedenrich and Lansing Stout, for petitioners.

David Logan and Joseph N. Dolph, for respondents.

DEADY, District Judge. On January 30, 1869, a petition was filed in this court by Einshein Brothers & Co., of San Francisco, against the firm of E. G. Randall and John Sunderland of this city, praying that said firm might be adjudged bankrupt, for the causes therein specified. An order to show cause was issued and made returnable February 13; at the same time an injunction was allowed against R. and S., and their assignee, John R. Foster, restraining them from interfering with or disposing of the goods, etc., of the firm. On the return day of the order to show cause, R. and S. appeared by counsel and filed an answer to the petition. At the same time by consent of counsel, the case was set down for hearing by the court, at a future day. On February 20, the court heard the testimony in the case and the argument of counsel, and took the matter under consideration.

The petition alleges the commission of three distinct acts of bankruptcy by R. and S.: (1) That R. and S. within six calendar months next preceding the date of the petition—in January, 1869—did make an assignment, sale and transfer of all their stock in trade, store fixtures and accounts—the same being all the property of R. and S.—to one John Foster, with intent to delay or hinder or defraud the creditors of them, the said R. and S. (2) That R. and S. within the period aforesaid, in contemplation of insolvency, did

voluntarily assign, transfer, and convey all of their property consisting as aforesaid, to one John R. Foster—the said Foster having reasonable cause then and there to believe that R. and S. were acting in contemplation of insolvency; and that said assignment, etc., was made with intent to prevent their property from coming to their assignee in bankruptcy, and to prevent the same from being distributed under the bankrupt act, and to defeat the object, and evade the provisions thereof. (3) That R. and S. within the period aforesaid, being merchants and traders at Portland on Wallamet, in the district aforesaid, fraudulently stopped payment of their commercial paper, within the period of fourteen days.

The answer of R. and S. tacitly admits the existence of the debt of the petitioning creditors—$6,183.56—and that it is provable in bankruptcy; and that they assigned all their property to Foster, but denies that such assignment was made in contemplation of insolvency, or with the fraudulent or illegal intents alleged in the petition or either of them. The answer also denies that R. and S. stopped payment of their commercial paper, or that they were insolvent or contemplated insolvency. On the trial Sunderland and Foster were examined as witnesses, but Randall not. No evidence was offered touching the third alleged act of bankruptcy.

Section 41 of the act, which provides for "a trial, to ascertain the fact of such alleged bankruptcy," declares, that if upon such trial "the debtor proves to the satisfaction of the court * * * that the facts set forth in the petition are not true * * * the proceedings shall be dismissed, and the respondent shall recover costs." The effect of this provision is to throw the burden of proof upon the respondents, and a denial of the facts in the petition by the answer of the respondents, does not shift this burden upon the petitioner. No other or less effect can be given to the language of section 41, requiring the debtor to prove that the facts set forth in the petition are not true. But it seems to me, on the other hand, that justice to the debtor, requires that the facts to be disproved by him, should be stated with such certainty and detail as to inform him of what he is to make an explanation or proof. A general statement in a petition that a debtor in January, 1869, stopped payment of his commercial paper for the period of fourteen days, is not, in my judgment, such an allegation of fact, as will warrant an adjudication of bankruptcy against the debtor, unless he disproves or explains it. In answer to this it may be said that the allegation concerning the commercial paper is in the language of form 54. But it should be remembered that the various statements of acts of bankruptcy, given in form 54, are mere outlines or skeleton statements, to be filled in with the particular circumstances of the case in question, and such is the direction given in the nota bene near the

end of the form. This allegation should state as nearly as possible the date of the promissory note or bill of exchange, of which payment had been stopped—to whom made, and for what amount, and when payable, and whether the debtor was liable thereon as maker or indorser, and by whom the same was held when payment was neglected or refused. Again, it may be said that if the allegation was not sufficiently distinct, the respondents should have declined to answer it on that ground, and asked that it be made more definite and certain or stricken out. This, I suppose, would be the better practice, particularly when there is an attempt to state a particular stoppage or suspension of payment, and the same is stated defectively or insufficiently. But when the allegation is a general one—that the debtor stopped payment of his commercial paper—without containing any particular fact or facts pointing to any particular paper, in my opinion, as to this, there are no "facts set forth in the petition," which the debtor is required to prove not true to prevent being adjudged a bankrupt thereon.

Before proceeding to consider the second act of bankruptcy set forth in the petition it will be necessary to state the evidence or the facts established by it, which is done as follows:

1. That from August, 1868, to Jan. 9, 1869, R. and S. were engaged as partners in the retail boot and shoe business, on the corner of First and Alder streets, as the successors of Holmes and Sunderland. That on the morning of January 9, aforesaid, Randall was found guilty by a jury in the United States court for the district, of a crime, punishable at least by ten years' imprisonment at hard labor, and that thereafter on the same day R. and S. by their writing under seal assigned, sold and transferred their entire property, consisting of stock in trade, store fixtures, and accounts, to John R. Foster, "for the benefit of all the creditors of said firm without distinction," and after the payment of said firm creditors, to be applied to the payment "of the individual debts of R. and S. according to their respective interests, that is to say, after the payment of the firm debts, the balance of the said property or the proceeds thereof, belongs to the said copartners in equal shares, and shall be so applied." The writing then authorizes and directs the assignee "to collect the said accounts and to manage said business, to sell and dispose of said goods according to his best discretion and judgment for the purposes aforesaid."

2. That the assignee executed the writing and accepted the trust, and took possession of the store and goods and carried on the business in the usual way—Sunderland remaining in the store—until the injunction was served upon him. The assignment did not state the names of any of the creditors of the firm, nor the amount separately or in the

aggregate of their claims; neither did it state the names of the individual creditors of the partners nor the amount of their individual indebtedness. Sunderland testified that he owed no individual debts. Foster, when being examined by the petitioner's counsel, testified that Randall told him that if he got what he was entitled to from the postoffice department, he thought it would pay his individual debts. An inventory of the goods, store fixtures and accounts is annexed to the assignment. The former were inventoried at their cost in San Francisco, with the freight to Portland added, and foot up $14,213.70. The store fixtures are lumped in, without any items, at $500. The sum of $156.50 is charged for premiums paid for insurance upon the goods. Sum total of value of goods, fixtures and insurance, $14,870.21. In addition to these, the inventory contains a list of accounts due the firm from about 190 different persons, the nominal value of which amounts to $2,256.80. Of these accounts what amounts to $104.25 are marked in the inventory as "doubtful."

The petition charges that R. and S. are indebted to merchants in San Francisco in the sum of about $12,000. Foster testifies that at the date of the assignment the indebtedness of the firm amounted to $13,000. The stock of goods on hand at date of assignment was a reasonably good one. There were, however, but few full packages. Most of them had been retailed from and some sizes and kind were lacking. The bulk of them was bought in August or September, 1868. Foster testifies that if the goods were put upon the market and sold at once for cash, that they would bring 30 cents on the dollar of the inventoried price, but that if he was allowed to carry on the business by keeping up the stock he could work them off so as to receive 100 cents on the dollar, and something more. Sunderland testifies, as to the cause of the assignment, that when Randall was found guilty and about to be imprisoned, that he thought he would protect his creditors by taking in a responsible party and making an assignment to him. He also testifies that on January 9 the goods were worth what they were inventoried at, and that they were sufficient to pay the debts of R. and S., but that if forced to sale for cash they would not bring 50 cents on the dollar of the inventoried price; that he did not know what the store fixtures were worth, and that as a general thing the accounts were a good lot and worth 75 cents on the dollar. Homer Sanborn, a merchant, testifies that he assisted to inventory the goods and that it is owing to circumstances whether they are worth the inventory price or not. Thought they were worth that to R. and S. Under the circumstances he would have been willing to take the goods and business and pay the debts of the firm. That he and John R. Foster were indorsers for R. and S. for $1,000.

[For hearing on a motion made by a creditor to reject the claim of the petitioning creditor in this case, see Case No. 11,552.]